Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Alexandria Witte (SBN 273494)
Alexandria.Witte@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:  (310) 556-4811
Facsimile:  (310) 943-0396

Attorneys for Plaintiff Jeanette Negrete

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA—SAN JOSE DIVISION

| | |
|---|---|
| JEANETTE NEGRETE, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA"),<br><br>Plaintiff,<br><br>vs.<br><br>PETSMART, INC., a Delaware corporation; RANDY MOSBACHER, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 13-cv-04300-EJD<br><br>[Assigned for All Purposes to Hon. Edward J. Davila]<br><br>**PLAINTIFF'S CLASS ACTION TRIAL PLAN IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:   May 16, 2014<br>Time:   9:00 a.m.<br>Place:   Courtroom 4 |

## I. OVERVIEW & INTRODUCTION

Plaintiff Jeanete Negrete ("Plaintiff") hereby submits the following Class Action Trial Plan (the "Trial Plan").[1] The Trial Plan is submitted in conjunction with Plaintiff's Motion for Class Certification to provide the Court and Defendant PetSmart Inc. ("Defendant") with a practical overview of how, in post-certification proceedings, the minimum wage, rest period, business reimbursement and vacation time claims will be adjudicated during the liability and damages phases. The Trial Plan demonstrates that this action is manageable as a class action. In addition, the case management techniques confirm the efficacy of class treatment as opposed to potentially hundreds of inefficient individual actions. *See, e.g., Bristow v. Lycoming Engines*, No. CIV. S-06-1947, 2007 U.S. Dist. LEXIS 45811, *21 (E.D. Cal. Jun. 14, 2007) (Karlton, J.) (trial plan establishes superiority element of Rule 23 class certification).[2] The Trial Plan also shows how the vacation time claim under the Private Attorney General Act of 2004 ("PAGA"), which does not need to be certified, may be tried on a class basis.

## II. POST-CERTIFICATION CASE MANAGEMENT: DETERMINATION OF LIABILITY AND DAMAGES AS TO THE CLASS

Courts have consistently recognized the efficacy of trial plans tailored to the specific needs of a case. In *Turner v. Murphy Oil USA, Inc*., for instance, the district court certified a class of plaintiffs who had suffered damages resulting from a post-Hurricane Katrina oil storage tank spill. 234 F.R.D. 597, 601 (E.D. La. 2006). In addition to the trial plan being intrinsically pertinent to the court's superiority assessment, it was also critical to the court's predominance inquiry. "[T]he Court believes that the existence of a trial plan, and the potential for bifurcation of the issues of liability and damages, will address the Defendant's concern that individualized inquiries will be needed to determine damage amounts in these cases." *Id.* at 606.

---

[1] Although not an express requirement, trial plans "often assists in identifying the relationship between individual and common elements of proof" under Rule 23. *See* Manual for Complex Litigation § 21.141 (4th ed. 2000). This preliminary Trial Plan can (and should) be modified to take into account any developments in the law and as the facts and evidence develops during the post-certification discovery phase.

[2] The *Bristow* court denied certification, but with leave to amend and to substitute a new named plaintiff. 2007 U.S. Dist. LEXIS 45811 at *1-2. The operative complaint was amended and the class certified three months later. 2007 U.S. Dist. LEXIS 70222 (E.D. Cal. Sep. 11, 2007).

### A. Mailing Class Notice To Class Members

Following certification, Defendant will provide the class members' names and contact information to a third-party administrator adequately experienced in class action notice procedures chosen by Class Counsel subject to Court approval. The administrator will mail a Court-approved class notice informing the class members about the action and of their right to participate, consistent with the established procedures in California and under Federal Rule of Civil Procedure 23. *See* [Proposed] Order at 3:22-4:6 (setting forth preliminary timeline of post-certification procedures).[3]

### B. Conducting Merits Discovery

Coinciding with the class notice, Plaintiff's counsel will propound "merits discovery," including written discovery and depositions, seeking evidence that would assist the fact finder in determining the merits of Plaintiff's allegations. For instance, Plaintiff will seek updated time and payroll records for all class members, and documents and deposition testimony from Defendant's payroll provider in order to understand and interpret these records. Plaintiff will also pursue discovery regarding Defendant's business expense reimbursement policy and its accrued vacation time policies and procedures.

Class Counsel may also seek specific information about the class members, aside from their names and contact information that would be produced as part of the class notice administration procedures identified immediately above, including dates of employment, positions held at the company, and other relevant data potentially bearing on the liability and damages phases determination. Class Counsel would also conduct interviews of the class members, identifying topics for additional discovery and witnesses for trial.

### C. Pre-Trial Procedures

Upon the completion of merits discovery, Plaintiff proposes a period of time that will accommodate the briefing of dispositive motions, as well as other motions capable of narrowing the issues at trial. Either party would have an opportunity to move for summary adjudication of

---

[3] Because discovery preceding class certification is typically focused on the elements of class certification, not the merits, Plaintiff reserves the option of revising or amending the Trial Plan to conform to later-discovered evidence or for other reasons.

one or more of the causes of action coinciding with any certified class or subclass, the adjudication as to any derivative cause of action, and, in the Court's discretion, any discrete factual or legal issue affecting the claims.

For instance, because Defendant's use of a commission-based compensation structure is undisputed, the issue of its legality under California's minimum wage laws – *i.e.*, that class members performed work for which they were not paid a commission – is well suited for a determination upon a pre-trial motion. If the Court determines that the policy is illegal, the only remaining issue would be damages, which could be easily calculated from Defendant's records.

A similar factual and legal determination can be made for the theory of liability pertaining to Defendant's rest period policies and practices. Specifically, Plaintiff contends that Defendant's practice of denying class members a paid rest period is illegal because their compensation was based on commissions from grooming appointments, and Defendant did not pay them separately for any rest breaks taken between or during appointments. The legality of Defendant's uniform practices may be determined before trial.

Likewise, the theory of liability for business expense reimbursement entails factual and legal determinations concerning Defendant's policy of not reimbursing employees for their purchase and maintenance of grooming tools. The Court could then determine the legality of this policy upon a dispositive motion. The same is true of Plaintiff's representative claim under PAGA.

**D.    Trial**

      **1.    Bifurcation Of Liability And Damages**

Perhaps this Trial Plan's most consequential procedural proposal is that liability and damages be adjudicated in separate, sequential phases. Such "bifurcation" has become a pervasive feature of U.S. civil litigation. *See, e.g., Bates v. United Parcel Servs.*, 204 F.R.D. 440, 443, 448 (N.D. Cal. 2001) (Henderson, J.) (granting motion to bifurcate where "[t]he first proposed phase would address 'General liability to the Class and equitable (Injunctive and Declaratory) relief issues,' and the second phase would address 'Named Plaintiff and

Page 3
PLAINTIFF'S CLASS ACTION TRIAL PLAN

Class damages'");[4] *In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 446 (D. Kan. 2006) (endorsing bifurcation); *In re Bendectin Litig.,* 857 F.2d 290, 320 (6th Cir. 1988) (same); *Jenkins v. Raymark Indus.,Inc.*, 782 F.2d 468, 474-75 (5th Cir. 1986) (bifurcating trial); *Simon v. Philip Morris, Inc.,* 200 F.R.D. 21 (E.D.N.Y. 2001) (discussing severance and consolidation of issues for phased trials in class action); *accord* Herr, *Manual for Complex Litigation* § 21.141 (2008).

Accordingly, Plaintiff proposes that the trial be bifurcated into a liability phase and damages phase.

### (a)   Liability Phase

The central issues to be determined in the liability phase are:

**Concerning Minimum Wage Liability:**

- Does Defendant's commission-based compensation policy violate California law, and are employees subject to the policy entitled to an additional compensation pursuant to California's minimum wage laws?

**Concerning the Rest Break Liability:**

- Does Defendant's rest break policy violate California law, and are employees subject to the policy entitled to an additional hour of pay pursuant to Labor Code section 226.7(b)?

**Concerning the Business Expense Reimbursement Liability:**

- Does Defendant's practice not to reimburse class members for purchase and maintenance of grooming equipment violate California law, and are employees who purchased and maintained their own grooming equipment entitled to compensation pursuant to California Labor Code sections 2800 and 2802?

---

[4] In *Bates*, the plaintiff had moved to bifurcate the action pursuant to Federal Rule 42(b), which provides as follows: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial." *See also Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. l995) ("The judge can bifurcate (or for that matter trifurcate, or slice even more finely) a case at whatever point will minimize the overlap in evidence between the segmented phases or otherwise promote economy and accuracy in adjudication").

**Concerning the Vacation Pay Liability:**

- Do Defendant's policies regarding the accrual of vacation time violate California law and are employees who were subject to these policies entitled to compensation?

The liability phase will also address Plaintiff's derivative claims for California Labor Code sections 201-204 (Wages Not Timely Paid Upon Separation); Labor Code section 226(a) (Non-Compliant Wage Statements); Business & Professions Code sections 17200, *et seq.*; and the Labor Code Private Attorneys' General Act of 2004 ("PAGA"), under California Labor Code sections 2698, *et seq.*

Plaintiff proposes to prove Defendant's liability through Defendant's own policy documents (including standard operating procedures) and handbooks, as well as deposition and witness testimony (including Defendant's designated witnesses).

Plaintiff tentatively estimates the liability phase will require 10-15 court days. However, Class Counsel anticipates proposing numerous mechanisms to shorten the trial substantially, for instance, limitations on the number of trial witnesses, proposing stipulated findings of fact and law, and obtaining stipulations regarding the authenticity of Defendant's corporate documents.

### 2. Damages Phase

If liability is found on any or all of the certified claims, the Court may employ one or more of the following: (a) allow a bench trial on common, aggregate damages;[5] and/or (b) appoint a special master to preside over damage determinations. *See, e.g., Hilao v. Estate of Marcos*, 103 F.3d 767, 786-87 (9th Cir. 1996) (affirming district court decision establishing claims process).[6]

---

[5] "Aggregate computation of class monetary relief is lawful and widely accepted. Courts have not required absolute precision as to damages and have allowed damages to be proven by references to the class as a whole, rather than by reference to each individual class member. Challenges that such aggregate proof affects substantive law and otherwise violated the defendant's due process or jury rights to contest each member's claim individually, will not withstand analysis." Conte & Newberg, 3 Newberg on Class Actions, § 10.5 at 483-86 (4th ed. 2002).

[6] Defendant may invoke the recent Supreme Court ruling in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (U.S. 2013), to argue that when damage calculations must be individually determined, class treatment is not warranted. However, the Ninth Circuit in *Leyva v. Medline Industries, Inc.,* 716 F.3d 510, 2013 U.S. App. Lexis 10649 (9th Cir. May 28, 2013), clarified that the certification standard for wage and hour cases remained unchanged by *Comcast.* Accordingly, the Ninth Circuit put to rest the notion that the existence of individual damages

The central issue of the damages phase will be determining the amount of relief the class, as an aggregate, is reasonably entitled to.  Plaintiff also anticipates that the evidence will provide a basis to distribute damages to each class member, in addition to the aggregate class damages.  Plaintiff will provide the trier of fact with a basis to calculate class-wide relief through the presentation of data and/or statistics (through lay and expert witnesses), as well as, *inter alia*, evidence regarding the economic harm resulting from Defendant's conduct.  *See* 3 Newberg on Class Actions § 10.5, at 483-87.

In fact, most of the evidence necessary to establish class-wide and individual damages is readily available through Defendant's own time and payroll databases which contain, *inter alia*, hours worked per work day and wage rates.  If necessary, damages determinations will also be augmented by survey evidence showing the incidence of ultimate violations.

For example, with respect to calculating damages for the minimum wage violations, an examination of Defendant's time and payroll records will identify those employees who were not paid for the time they worked before, after and between grooming appointments because they were paid on commission.  Updated records will be obtained during the merits discovery phase described in this Trial Plan.  (*See* Sect. II.B., *supra.*)  Damages for each class member may be further tailored through survey techniques and expert testimony.

Likewise, damages pertaining to class members' rest period claim may be easily determined from Defendant's records because under a commission-based compensation structure Defendant never provided paid rest periods.  Instead, class members took a rest period – if at all – between grooming appointments, time for which they were not paid.  Accordingly, damages can be easily calculated for each class member based on the number of days he or she worked under a commission-based system and his or her hourly rate.

With respect to calculating damages for business expense reimbursement claim, damages can be calculated by identifying class members that purchased and maintained grooming equipment and determining – through survey techniques, expert testimony, or percipient witness testimony – the cost of the purchase and maintenance of this equipment.

defeats class certification.

1   Finally, the amount due to employees due to Defendant's illegal vacation time policies
2   may be easily determined from Defendant's own payroll records which show what employees
3   accrued vacation time for which they were not compensated.

4   It is well-settled that the calculation of monetary relief on a class-wide basis is readily
5   manageable.  *See*, *e.g.*, *Sav-On v. Superior Court*, 34 Cal. 4th 319, 326-27 (2004) (affirming
6   California's public policy favoring class action device and directing courts to use innovative
7   techniques to manage their cases as class actions); *see also Bell v. Farmers Ins. Exch.*, 115 Cal.
8   App. 4th 715, 755 (2004) (upholding use of statistical methodologies to determine damages in a
9   class case).  Indeed, Plaintiff's proposed method has been approved by the leading class action
10  treatise:

> Inherent in the basic theory of class actions is the fact that the court and the parties recognize the defendant's full liability exposure from the outset, because of common questions of the defendant's liability to the class.  If the liability to the class is proved, then class recovery entitlement is measured by individual or aggregate proofs of loss or of the defendant's unjust enrichment.

18  3 Newberg on Class Actions, § 10.05; *see also In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019-
19  20 (5th Cir. 1997) ("The essence of the science of inferential statistics that one may confidently
20  draw inferences about the whole from a representative sample of the whole"); *In re Simon II*
21  *Litig.*, 211 F.R.D. 86, 150 (E.D.N.Y. 2002), *vacated and remanded on other grounds*, 407 F.3d
22  125 (2d Cir. 2005) ("The use of statistical evidence and methods in the American judicial
23  system to establish liability and damages is appropriate" in mass injury cases).

24  Plaintiff estimates the damages phase will require 5 to 10 court days.

25  **3.     Structuring the Phases**
26  **(a)     Liability Phase**
27  Plaintiff proposes that the liability phase be structured as follows:
28  o   Opening Arguments

- o Plaintiff's case-in-chief
- o Taking of evidence regarding Defendant's liability;
- o Defendant's case-in-chief;
- o Plaintiff's rebuttal
- o Closing Arguments
- o Court decides liability on claims.

    **(b)**    **Damages Phase**

It is proposed that the damages phase be conducted as follows:

- **Preliminary Procedural Determination**
  - o Determine whether there will be a bench trial on common, aggregate damage; or special master appointment.
- **Minimum Wage Liability**
  - o Plaintiff's Presentation of Evidence as to Minimum Wage Damages
    - Percipient Witness Testimony
    - Expert Witnesses Testimony
  - o Defendant's Presentation of Evidence as to Minimum Wage Damages
    - Percipient Witness Testimony
    - Expert Witnesses Testimony
- **Rest Break Liability**
  - o Plaintiff's Presentation of Evidence as to Rest Break Damages
    - Percipient Witness Testimony
    - Expert Witnesses Testimony
  - o Defendant's Presentation of Evidence as to Rest Break Damages
    - Percipient Witness Testimony

PLAINTIFF'S CLASS ACTION TRIAL PLAN

1  ▪ Expert Witnesses Testimony
2  • **Business Expense Reimbursement Liability**
3  o Plaintiff's Presentation of Evidence as to Business
4  Expense Reimbursement Damages
5  ▪ Percipient Witness Testimony
6  ▪ Expert Witnesses Testimony
7  o Defendant's Presentation of Evidence as to Business
8  Expense Reimbursement Damages
9  ▪ Percipient Witness Testimony
10  ▪ Expert Witnesses Testimony
11  • **Vacation Time Liability**
12  o Plaintiff's Presentation of Evidence as to Vacation Time
13  Damages
14  ▪ Percipient Witness Testimony
15  ▪ Expert Witnesses Testimony
16  o Defendant's Presentation of Evidence as to Vacation Time
17  Damages
18  ▪ Percipient Witness Testimony
19  ▪ Expert Witnesses Testimony

20  **III. CONCLUSION**

21  Conducted in bifurcated phases, as proposed by Plaintiff's Trial Plan, the adjudication of
22  liability and determination of damages will afford the Court and the parties with a fair and
23  efficient resolution of this class action.

24  Dated: January 31, 2014                         Respectfully submitted,

25                                                  Capstone Law APC

26
                                                    By: /s/ Raul Perez
27                                                  Raul Perez
                                                    Alexandria Witte
28
                                                    Attorneys for Plaintiff Jeanete Negrete